UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------x
: 
COMMUNITY HEALTHCARE ASSOC. OF :
NEW YORK, ET AL., :
: 10 Civ. 8258 (TPG)
Plaintiffs, :
: **OPINION**
– against – :
:
NEW YORK STATE DEPARTMENT OF :
HEALTH, ET AL., :
:
Defendants. :
------------------------------------------------x

      Plaintiffs are numerous "health centers" and a non-profit trade association. They bring this action seeking declaratory and injunctive relief regarding alleged underpayment of Medicaid funds by the State of New York. The defendants in this action are the State of New York, the New York State Department of Health ("DOH"), Richard Daines, M.D., in his official capacity as Commissioner of the New York State Department of Health, and 20 unnamed defendants.

      The State of New York and DOH (sometimes herein collectively, "the State") move for dismissal under Fed. R. Civ. P. 12(b)(1) based on sovereign immunity as a jurisidictional bar to plaintiffs' claims, and under Rule 12(b)(6) for plaintiffs' failure to state a claim upon which relief can be granted.

      The motion is granted because the State of New York and DOH are immune from suit.

**FACTS**

The following is a summary of the facts and allegations set forth in the complaint. For the purpose of this motion, these facts are assumed to be true.

<u>The Parties</u>

All but one of the plaintiffs are New York institutions, denominated as Federally-Qualified Health Centers ("FQHCs"). They participate in the State's Medicaid program. They receive federal grant monies under the Public Health Service Act, 42 U.S.C. §§ 201, et seq. ("PHSA"). Also a plaintiff is the Community Health Care Association of New York, a non-profit association representing FQHCs. These types of centers were created by and operate according to PHSA, which provides these centers with federal funds to support the provision of medical services to underserved populations. 42 U.S.C. § 254b. According to the complaint, these centers receive "special and invariably higher sums than otherwise would be paid" to another provider.

Defendants State of New York and DOH are charged with administering the Medicaid program in New York.

<u>Medicaid FQHC Funding Requirements</u>

In their complaint, plaintiffs describe a complex legislative scheme, the aim of which is to provide full reimbursement to FQHCs for costs incurred meeting the medical needs of underserved populations. As the

- 2 -

law stands now, states receiving Medicaid funds are required to make a fixed reimbursement payment to FQHCs for each patient visit. This standardized rate, known as a "prospective payment system" ("PPS"), is set by Congress. 42 U.S.C. § 1396a(bb). This rate is the average of the particular FQHC's reasonable costs (defined by statute and regulation) for fiscal years 1999 and 2000, adjusted by an inflator known as the "Medicare Economic Index." Federal law does not authorize or impose any cap on this rate. States are also given the flexibility to work with FQHCs to come to an agreed alternative rate so long as that rate results in payments that are no less than would have been received by the FQHCs under the PPS.

New York, like many other states, utilizes managed care organizations ("MCOs") to administer a substantial part of its Medicaid program. For various reasons these MCOs have a tendency to under-reimburse FQHCs for the care they provide. To compensate for this underfunding, Congress requires states to cover any shortfall in reimbursement to FQHCs:

> For example, if the MCO paid an FQHC $100 for a Medicaid managed care visit and the reasonable costs incurred by the FQHC were $150, then the State was required to make a supplemental payment of $50. This supplemental payment has become known as a "wraparound" payment.

To put these requirements another way, the State has an obligation pursuant to federal law to fully reimburse FQHCs for their costs of

providing medical services, with the only permissible reduction in these payments being for payments already made by MCOs.

Alleged Underfunding by the State of New York

Plaintiffs allege that defendants have continually violated federal law by failing to meet their payment obligations. Plaintiffs describe five general techniques allegedly used by defendants.

1. In calculating the base PPS rate from fiscal years 1999 and 2000, defendants "applied a methodology that is inherently arbitrary, capricious, and contrary to what federal law demands."

2. Defendants refuse to pay the federally-required higher FQHC-rate for a significant number of healthcare services provided by these centers.

3. Defendants improperly restrict the provision of wraparound payments.

4. Defendants improperly exclude services performed for certain MCO enrollees from being eligible for the special FQHC payment.

5. Defendants have impermissibly reduced the number of services (compared to fiscal years 1999 and 2000) included in determining the PPS rate.

These violations have allegedly led and will continue to lead to significant underfunding of FQHC services in New York in violation of federal law.

**DISCUSSION**

State defendants move to dismiss the action with respect them as they are immune from suit pursuant to the Eleventh Amendment of the United States Constitution. The state defendants note the broad reach of sovereign immunity and argue that none of the exceptions to such immunity apply in this case.

Plaintiffs respond that this action is taken to recover federal property unlawfully held by the State of New York, and is thus outside the scope of sovereign immunity. Plaintiffs also argue that pursuant to federal law, which commands them to "make every reasonable effort" to collect the funds that are due them, they are required to bring this suit. Finally, plaintiffs claim that sovereign immunity does not apply to suits seeking funds that states are required to pay to others because a state's sovereign immunity is limited to suits regarding money and property that the state owns free and clear.

Legal Standard

Rule 12(b)(1) of the Federal Rules of Civil Procedure empowers a court to dismiss a complaint for "lack of jurisdiction over the subject matter." The party invoking federal jurisdiction bears the burden of establishing its existence. McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 182, 189 (1936). In addition, a waiver or abrogation of sovereign immunity is a prerequisite for jurisdiction in a suit against a

state or state agency.  Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 98-100 (1984).

Sovereign Immunity

The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI.  As the Second Circuit has explained:

> The Supreme Court has consistently held that the federal courts lack jurisdiction not only over suits against a state brought by citizens of other states, as the literal language of the Amendment provides, but also over suits against such states brought by their own citizens. Thus, it is clear that, with few exceptions, federal courts are barred from entertaining suits by a private party against a state in its own name.

Dwyer v. Regan, 777 F.2d 825, 835 (2d Cir. 1985).  As noted above, the doctrine of sovereign immunity applies not only to a state but to a state agency such as the DOH.

There are only "two circumstances in which an individual may sue a state.  First, Congress may authorize such a suit in the exercise of its power to enforce the Fourteenth Amendment, which was enacted after the Eleventh Amendment and specifically designed to alter the federal-state balance."  Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 670 (1999).  Such an authorization is

referred to as an "abrogation of the Eleventh Amendment." "Second, a State may waive its sovereign immunity by consenting to suit." Id. Plaintiffs make no explicit claim that either of these exceptions to sovereign immunity apply in this case. They assert certain other theories, which, as will be described, cannot be accepted by the court.

Plaintiffs first rely on the fact that sovereign immunity is no bar to the federal Government suing states. Plaintiffs argue that they are trustees of federal funds to which they are entitled under federal law. As such, it is agrued, they stand in the shoes of the federal Government, so that the doctrine of sovereign immunity does not bar their suit against the State. This argument has no merit. Persons and entities entitled to federal funds do not become--or "stand in the shoes of"--the federal Government itself. In fact, even where the federal Government has expressly permitted individuals to bring suit on its behalf--*qui tam* actions--there remains "serious doubt" whether such actions are permitted against states. Vermont Agency of Natural Resources v. U.S., 529 U.S. 765, 766 (2000). In any event the Government has not authorized the present suit to be brought on its behalf.

Plaintiffs further argue that they are directed to bring this suit against the State pursuant to federal statute, the PHSA, which provides that FQHCs shall "make every reasonable effort" to collect all Medicaid payments they are due. Plaintiffs argue that this statutory direction in effect authorizes them to sue states that are obligated to distribute the

federal funds.  This is essentially an argument that the PHSA abrogates the Eleventh Amendment.  But the abrogation doctrine only applies to cases authorized by Congress under the Fourteenth Amendment.  This present action is not such a case.  The PHSA was enacted pursuant to the Commerce Clause, not the Fourteenth Amendment, and thus cannot authorize plaintiffs to sue a state in derogation of the Eleventh Amendment.  See Seminole Tribe of Florida v. Florida, 517 U.S. 44, 66 (1996).

Finally, plaintiffs point to a series of cases holding that, despite sovereign immunity, individuals may sue states for the return of illegally seized property.  The cases cited by plaintiffs involved "funds that had been escheated, but not permanently escheated, because the State held such funds in custodial trust for the benefit of property owners."  Suever v. Connell, 439 F.3d 1142, 1147 (9th Cir. 2006).  These cases are not on point.  The State has seized no property from plaintiffs.  This action is essentially a dispute over the proper reimbursement formula to be employed by the state defendants pursuant to federal law.  There are various ways of resolving this dispute, but they do not include suing the State of New York or DOH.

## CONCLUSION

The State of New York and DOH's motion to dismiss is granted.

Dated: New York, New York
       May 26, 2011

*/s/ Thomas P. Griesa*
Thomas P. Griesa
U.S.D.J.